USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 12/7/2018

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
UNITED STATES OF AMERICA,

    -against-

MALCOLM BROWN,
    a/k/a "MALCOLM JINN BROWN,"
    a/k/a "ALTON HENRY,"
    a/k/a "JILL REID,"
    a/k/a "JINN REID,"
    a/k/a "RICHARD SCOTT,"

                       Defendant.

18 Cr. 532 (AT)

**OPINION
AND ORDER**

ANALISA TORRES, District Judge:

Defendant, Malcolm Brown, moves to dismiss the indictment pursuant to Federal Rule of Criminal Procedure 12(b)(3)(B) on the ground that the underlying deportation order was based on the erroneous conclusion that he was ineligible for voluntary departure. Def. Mem., ECF No. 14. For the reasons stated below, the motion is GRANTED.

## BACKGROUND

Defendant, a Jamaican citizen, entered the United States as a minor sometime in the early 1990s. Kaminsky Decl. ¶ 3, ECF No. 13; Deportation Hearing Transcript, Kaminsky Decl. Ex. C at 7. On five occasions between 2000 and 2001, Defendant was convicted of sale of marijuana in the fourth degree, a misdemeanor, in violation of N.Y. Penal Law § 221.40. Kaminsky Decl. ¶ 5; Gov't Opp. at 2–3, ECF No. 17. He was sentenced to a total of thirty days in jail and three years' probation. Kaminsky Decl. ¶ 5. In December 2006, Defendant pleaded guilty to criminal possession of marijuana in the first degree, a felony, in violation of N.Y. Penal Law § 221.30, and was sentenced to five years' probation. Kaminsky Decl. ¶ 5; Gov't Opp. at 2–3.

On April 3, 2008, the U.S. Department of Homeland Security, Immigration and Naturalization Services commenced removal proceedings against Defendant. Gov't Opp. at 3. On April 10, 2008, Defendant appeared *pro se* at the removal hearing before the Honorable Alan

Vomacka (the "IJ"). Gov't Opp. at 3; Deportation Hearing Transcript at 2 ("He's present, he does not have an attorney."). As set forth in the colloquy below, at the hearing Defendant requested "voluntary departure" but the IJ informed him that he was ineligible because his convictions for the sale of marijuana constituted aggravated felonies:

> Judge Vomacka: Alright, what would you like to do about the case? Do you want to have the hear—?
>
> Defendant: Volunteer, volunteer.
>
> Judge Vomacka: You're thinking about voluntary de—?
>
> Defendant: Yeah.
>
> Judge Vomacka: Departure?
>
> Defendant: Yeah.
>
> Judge Vomacka: Alright, well voluntary departure is something that comes up near the end of a hearing if you could be removed, if you're here illegally and you want to leave without actually being removed or deported. It may or may not be possible for you to qualify for that. I don't know enough about it. I can't promise ahead of time that you will get it. Your chance to get voluntary departure might be better if you have a lawyer to help you. Um, now the other thing is some people say 'voluntary departure' and what they mean is they just want to be deported, but there's a difference between the two. Deportation is when immigration pays for your ticket back to Jamaica or wherever.
>
> Defendant: No, I know. Your family, your family, but departure, voluntary departure—
>
> Judge Vomacka: Right, so you know the difference?
>
> Defendant: Yeah.
>
> Judge Vomacka: Okay, so do you want to have the hearing today or do you want—?
>
> Defendant: Yeah, yeah. I would—I would rather have the hearing today.
>
> Judge Vomacka: Alright, you understand I'm not promising that you're going to qualify or get voluntary departure?

Defendant: No, no, it's no problem.

Judge Vomacka: [Reviews the Government's submission]. Um, let me just tell you that the rap sheet that was presented seems to indicate—I mean I don't know if it's true, but it looks like you may have at least two convictions for sale of marijuana back in 2001, um, and those indicate, uh, looks like terms of probation. Maybe even three convictions for sale of marijuana. I don't know, but if you have any one conviction for sale of any illegal drug, you are not going to qualify for voluntary departure, so I just want to make that clear to you. That's what's called an aggravated felony.

Deportation Hearing Transcript at 4–6.

Following the hearing, the IJ entered an order of removal, and on June 3, 2008, Defendant was removed from the United States. Compl. ¶ 3.c, ECF No. 1. In March 2009, Defendant reentered the United States, was convicted of illegal reentry after removal subsequent to a conviction for an aggravated felony in violation of 8 U.S.C. §§ 1326(a), (b)(2), and removed on August 26, 2010. Compl. ¶ 3.d–f. In 2018, Immigration and Customs Enforcement learned that Defendant had again reentered the United States. Compl. ¶ 4. On July 25, 2018, a grand jury indicted Defendant, charging him with illegal reentry in violation of 8 U.S.C. §§ 1326(a), (b)(1). Indictment, ECF No. 6.

Defendant moves to dismiss the indictment on the ground that the 2008 removal order, upon which the indictment is premised, "was obtained in violation of the [due process clause of the] Fifth Amendment because the immigration judge misinformed him that he was ineligible for voluntary-departure relief from removal." Def. Mem. at 1. Defendant contends that he was eligible for voluntary departure because his marijuana convictions were not aggravated felonies. *Id.* at 4–5.

**DISCUSSION**

I.       Legal Standard

       A. Illegal Re-Entry and Voluntary Departure

"Section 1326(a) of Title 8 of the United States Code makes it a crime for a deported or removed alien to enter, attempt to enter, or be found in the United States without the express consent of the Attorney General." *United States v. Calderon*, No. 02 Cr. 0691, 2003 WL 1338943 at *4 (E.D.N.Y. Jan. 9, 2003). Because a prior deportation order is an element of the crime, a noncitizen who was granted voluntary departure, rather than deported or removed, cannot be prosecuted for illegal reentry. *See* 8 U.S.C. § 1326(a)(1).

"Voluntary departure is a discretionary form of relief that allows certain favored aliens—either before the conclusion of removal proceedings or after being found deportable—to leave the country willingly." *Dada v. Mukasey*, 554 U.S. 1, 8 (2008). Certain statutory eligibility requirements for voluntary departure vary depending on when an application is made. *See* 8 U.S.C. § 1229c; 8 C.F.R. § 1240.26. However, regardless of when the application is made, conviction of an aggravated felony, as defined by the Immigration and Nationality Act ("INA"), renders a noncitizen ineligible for voluntary departure. 8 U.S.C. § 1229c; *see also* 8 U.S.C. § 1227(a)(2)(A)(iii).

       B. Collateral Attack

A defendant charged with illegal reentry may collaterally attack the deportation order upon which the illegal reentry charge is based. 8 U.S.C. § 1326(d). To do so, a defendant must demonstrate that: (1) she exhausted any remedies that may have been available to seek relief against the order; (2) the deportation proceedings at which the order was issued improperly deprived her of the opportunity for judicial review; and (3) the entry of the order was

fundamentally unfair. *Id*.

II. Analysis

    A. Fundamental Unfairness

The Court will begin with the third prong of § 1326(d), fundamental unfairness, as it informs the analysis of the other two prongs. "To show fundamental unfairness [under Section 1326(d)(3)], a defendant must show both a fundamental procedural error and prejudice resulting from that error." *United States v. Copeland*, 376 F.3d 61, 70 (2d Cir. 2004) (alteration in original) (citation and internal quotation marks omitted).

        1. Fundamental Error

The Court first considers whether a failure to advise a noncitizen about the right to seek voluntary departure can constitute a fundamental error, and then considers whether the failure in this particular case was an error. Although the Second Circuit has not directly addressed this question, district courts in this Circuit have relied on the reasoning articulated in analogous cases. Specifically, the Second Circuit has held repeatedly that the failure to advise a noncitizen of the right to seek a waiver of deportation under Section 212(c)[1] constitutes fundamental error even though 212(c) relief, like voluntary departure, is discretionary. *See United States v. Calderon*, 391 F.3d 370, 376 (2d Cir. 2004) (holding that failure to advise of right to seek 212(c) relief can constitute fundamental error); *Copeland*, 376 F.3d at 71 ("[A] failure to advise a potential deportee of a right to seek Section 212(c) relief can, if prejudicial, be fundamentally unfair within the meaning of Section 1326(d)(3).").

---

[1] Former Section 212(c) permitted a noncitizen to seek a waiver of deportation under specified conditions. 8 U.S.C. § 1182(c) (repealed 1996). It has since been repealed and replaced. Illegal Immigration Reform and Immigrant Responsibility Act of 1996, Pub. L. No. 104-208, 110 Stat. 3009-546, § 304(b) (1996). *See also Calderon*, 391 F.3d at 372–73 (briefly describing section 212(c) and its repeal); *Copeland*, 376 F.3d at 64.

Relying on the reasoning in *Copeland* and *Calderon*, district courts within this Circuit have consistently held that the failure to advise of the right to seek voluntary departure is a fundamental error. *See, e.g.*, *United States v. Guzman*, No. 18 Cr. 216, 2018 WL 3443158, at *4 (S.D.N.Y. July 17, 2018) ("The immigration judge's failure to inform [the defendant] of the availability of voluntary departure was a fundamental procedural error."); *United States v. Gonzalez*, No. 15 Cr. 0021, 2015 WL 3443942, at *1 (S.D.N.Y. May 29, 2015) ("[T]he Court follows the only courts within this Circuit to have decided the question and holds that the failure to inform an alien about the right to seek voluntary departure does indeed qualify as fundamental error if the alien shows that he was prejudiced by the error."). The *Gonzalez* Court carefully analyzed the issue, ultimately concluding that "the Second Circuit's decision in *Copeland* all but compels [the] conclusion [that failing to advise of the availability of voluntary departure is a fundamental error]." 2015 WL 3443942, at *7. This Court, therefore, joins other courts in this Circuit in concluding that a failure to advise of the right to seek relief through voluntary departure is a fundamental error.

The Court now analyzes whether the IJ's instructions in this case amounted to fundamental error. Here, in response to Defendant's inquiry into the possibility of voluntary departure, the IJ informed Defendant that he was ineligible for voluntary departure because his convictions for marijuana sales constituted aggravated felonies. Deportation Hearing Transcript at 6 ("[I]t looks like you may have at least two convictions for sale of marijuana . . . if you have any one conviction for sale of an illegal drug, you are not going to qualify for voluntary departure, so I just want to make that clear to you. That's what's called an aggravated felony conviction.").[2]

---

[2] An aggravated felony includes "illicit trafficking in a controlled substance . . . including a drug trafficking

Defendant argues that this instruction constituted fundamental error because although at the time of the hearing the Board of Immigration Appeals ("BIA") interpreted aggravated felony to include N.Y. Penal Law § 221.40,[3] *see, e.g.*, *In re: Egerton Barrington Stewart*, No. A41 648 468, 2006 WL 3252568, at *1 (BIA Aug. 24, 2006), the Second Circuit has since corrected that interpretation—holding that a violation of § 221.40 is not an aggravated felony because it can be accomplished by the "nonremunerative transfer of small quantities of marihuana." *Martinez v. Mukasey*, 551 F.3d 113, 120 (2d Cir. 2008). In other words, at the time of Defendant's hearing, the IJ's instruction was in line with the BIA's erroneous interpretation of the INA. The Second Circuit had not yet addressed the issue, but it has since rejected the BIA's interpretation.[4]

Second Circuit law establishes that an IJ commits fundamental error when she advises a noncitizen that she is ineligible for discretionary relief based upon an erroneous BIA interpretation of the INA that has since been corrected. In *Copeland*, the defendant "moved to

---

crime . . . ." 8 U.S.C. § 1101(a)(43)(B). A "drug trafficking crime" includes "any felony punishable under the Controlled Substances Act." 18 U.S.C. § 924(c)(2). "[A] state offense constitutes a 'felony punishable under the Controlled Substances Act' only if it proscribes conduct punishable as a felony under that federal law." *Lopez v. Gonzales*, 549 U.S. 47, 60 (2006). Therefore, "[f]or a state drug offense to qualify as a 'drug trafficking crime' and, by extension, an aggravated felony, it must correspond to an offense that carries a maximum term of imprisonment exceeding one year under the [Controlled Substances Act]." *Martinez v. Mukasey*, 551 F.3d 113, 117–18 (2d Cir. 2008) (citing *Lopez*, 549 U.S. at 61–62 n.7).

[3] Defendant was also convicted of criminal possession of marijuana in the first degree, Kaminsky Decl. ¶ 5, but, as the IJ recognized, possession is not an aggravated felony. Deportation Hearing Transcript at 6 ("The possession that's reflected in this more recent case might be a negative factor, but it's not like a total disqualification.").

[4] The Government argues that, at the time of Defendant's hearing, Second Circuit precedent established that prior convictions for § 221.40 constituted aggravated felonies, and that the BIA considered itself bound by this precedent. Gov't Opp. at 10–13. Specifically, the Government contends that *United States v. Simpson*, 319 F.3d 81, 85 (2d Cir. 2002) held that "prior convictions for Criminal Sale of Marijuana in the Fourth Degree under New York law [are] 'aggravated felonies.'" Gov't Opp. at 10. Defendant, however, correctly points out that the *Simpson* holding regarding aggravated felonies was explicitly cabined to the Sentencing Guidelines. *See* Def. Reply at 6–7; *see also Simpson*, 319 F.3d at 86 n. 7 ("We offer no comment on whether such convictions constitute 'aggravated felonies' for any purpose other than the Guidelines."). The Second Circuit reiterated this in *Martinez v. Mukasey* when it held that a violation of § 221.40 is not an aggravated felony for purposes of the INA without overruling *Simpson*. 551 F.3d at 121 ("*Simpson* does not in any way dictate the question of law now before us. It is quite self-consciously only the law of the circuit for cases under the Sentencing Guidelines."). The Court, therefore, rejects the Government's argument that Second Circuit precedent established that convictions of Section 221.40 violations constituted aggravated felonies for purposes of determining voluntary departure eligibility at the time of Defendant's hearing. The Court also finds that the BIA's reliance on *Simpson* was unreasonable because the case's holding regarding aggravated felonies was explicitly limited to sentencing.

dismiss the indictment [for illegal reentry] on the grounds that his deportation order, an element of the crime of illegal reentry, was invalid" because the IJ inaccurately told him that he was ineligible for Section 212(c) discretionary relief due to a narcotics conviction. 376 F.3d at 63, 65. The IJ informed the defendant that he did not qualify for a waiver of deportation under Section 212(c) because two new laws amending the INA (the "1996 Amendments") severely limited a noncitizen's ability to seek discretionary relief if she had an aggravated felony conviction. *Id.* at 64. The defendant "seemingly tried to ask whether the date of his conviction affected his eligibility for waiver," but the IJ informed him that it did not. *Id.* at 63. At the time of the defendant's deportation hearing, the IJ's instruction was consistent with "the BIA's position [] that the 1996 Amendments applied retroactively to aliens, like Copeland, who had pled guilty to aggravated felonies prior to their enactment." *Id*. at 64. Subsequent to the defendant's deportation hearing, the Supreme Court held that the 1996 Amendments "could not be applied retroactively to aliens who pled guilty to crimes prior to 1996 that made them ineligible for Section 212(c) relief under the 1996 Amendments." *Id.* (citing *INS v. St. Cyr*, 533 U.S. 289, 326 (2001)). Thus, even though the IJ applied BIA precedent at the time of the hearing, in light of the new statutory interpretation, the Second Circuit held that the IJ's failure to inform the defendant of his right to seek discretionary relief constituted fundamental error. *Id.* at 73.

The Second Circuit reiterated this principle in *United States v. Calderon*. There, the defendant "moved to dismiss [the indictment for illegal re-entry] on the ground that the deportation proceeding in May 2000 violated his right to due process of law, in light of the IJ's erroneous ruling that he was ineligible for discretionary relief from deportation." *Calderon*, 391 F.3d at 373. At the 2000 deportation hearing, the IJ had advised the defendant that he was

ineligible for 212(c) relief "based upon a then-prevalent misinterpretation of two 1996 statutory changes to the INA" that was corrected after the defendant's hearing. *Id.* Given the IJ's misinterpretation, the Second Circuit upheld the District Court's finding that the deportation proceeding was fundamentally unfair. *Id.* at 376.

That reasoning applies here, where the IJ similarly relied on a "then-prevalent" BIA misinterpretation of the INA to conclude that Defendant was ineligible for discretionary relief, an interpretation that has since been rejected by the Second Circuit. *See supra* at 7. Although *Copeland* and *Calderon* involved Section 212(c) relief and this case involves voluntary departure, both are mechanisms for discretionary relief and the Court sees no reason to distinguish between the two for present purposes. The Government argues that the "Court must evaluate any alleged procedural error based upon the prevailing law at the time of the Defendant's hearing," and that, therefore, there was no error. Gov't Opp. at 9. First, the Second Circuit case relied on by the Government is inapposite.[5] *Id.* at 14 (citing *Hui Jin Lin v. Holder*, 426 F. App'x 24, 25 (2d Cir. 2011)). In *Hui Jin Lin*, the noncitizen sought to have a "new guideline that did not take effect until several years after she was removed" applied to her case. *Id.* Here, the relevant statute has not changed; the only change has been the Second Circuit's rejection of the BIA's interpretation of that statute. *See Rivers v. Roadway Express, Inc.*, 511 U.S. 298, 312–13 (1994) ("A judicial construction of a statute is an authoritative statement of what the statute meant before as well as after the decision of the case giving rise to that construction."). Second, as noted above, at the time of Defendant's hearing, the Second Circuit had not spoken on this issue; instead, the "prevailing law" the Government refers to is the BIA's

---

[5] The Government also cites several cases from other Circuits, none of which are binding on this Court. *See* Gov't Opp. at 14–15; *see also Newsweek, Inc. v. U.S. Postal Serv.*, 663 F.2d 1186, 1196 (2d Cir. 1981) ("[I]t is well settled that the decisions of one Circuit Court of Appeals are not binding upon another Circuit.").

misinterpretation of the INA and its unreasonable reliance on *Simpson*. *See* note 4, *supra*. The Court concludes, therefore, that the IJ's instruction that Defendant was ineligible for voluntary departure constituted fundamental error.

2. Prejudice

"Prejudice is shown where there is a reasonable probability that, but for the IJ's unprofessional errors, the alien would have been granted [relief from removal]." *Copeland*, 376 F.3d at 73. "To meet that burden, [the noncitizen] must demonstrate *both* a reasonable probability that he would have sought voluntary departure *and* that such relief would have been granted." *Gonzalez*, 2015 WL 3443942, at *11. A reasonable probability has been defined as a "probability sufficient to undermine confidence in the outcome," *United States v. Lopez*, 445 F.3d 90, 100 (2d Cir. 2006) (internal quotation marks and citation omitted), and quantified as a twenty percent probability that relief would have been granted absent the error, *see United States v. Copeland*, 369 F. Supp. 2d 275, 288 (E.D.N.Y. 2005).

To be entitled to voluntary departure, a noncitizen must meet certain statutory eligibility requirements and also show that "he merits voluntary departure in the exercise of discretion." *In re Arguelles-Campos*, 22 I. & N. Dec. 811, 1999 WL 360383, 819 (BIA 1999). Noncitizens may apply for voluntary departure before, during, or after their removal hearing. If the alien applies before or during the removal hearing (i.e. pre-hearing) she must concede removability, withdraw any other previous requests for relief, and waive appeal. 8 C.F.R. § 1240.26(b). If the noncitizen applies post-hearing, she must meet more rigorous requirements, including demonstrating that she "is, and has been, a person of good moral character for at least 5 years immediately preceding" the application. 8 U.S.C. § 1229c(b)(1)(B).[6]

---

[6] Regardless of when the application is made, a noncitizen is ineligible for voluntary departure if she has been

IJs have broad discretion to grant voluntary departure, *Patino v. Holder*, 520 F. App'x 18, 20 (2d Cir. 2013), and consider many factors including "additional violations of the immigration laws; the existence, seriousness, and recency of any criminal record; and other evidence of bad character or the undesirability of the applicant as a permanent resident," *In re Arguelles-Campos*, 22 I. & N. Dec. at 817. "[D]iscretion may be favorably exercised in the face of adverse factors where there are compensating elements such as long residence here, close family ties in the United States, or humanitarian needs." *Id.*

i. Two Step Test for Prejudice

1. Step 1

To demonstrate prejudice, Defendant must first demonstrate a reasonable probability that he would have sought voluntary departure. *Gonzalez*, 2015 WL 3443942, at *11.

Here, Defendant did seek voluntary departure during the hearing. Deportation Hearing Transcript at 4. However, the Government argues that Defendant withdrew his request and, therefore, must demonstrate that "he would have made a *second* pre-hearing request for voluntary departure or a post hearing request." Gov't Opp. at 17. This is important for prong two of the prejudice test, as well as prong one, because the statutory eligibility requirements vary depending on the timing of the request and these requirements in turn impact whether Defendant was prejudiced by the IJ's error.

The record demonstrates that Defendant did not withdraw his request. The Government argues that he did because after first asking for voluntary departure, Defendant "promptly declined" the opportunity to make a pre-hearing voluntary departure application when he stated

---

convicted of an aggravated felony or is removable on national security grounds.
8 C.F.R. §§ 1240.26(b)(1)(i)(E), (c)(1)(iii).

11

that he would like to postpone the hearing. Gov't Opp. at 16. The Government's argument is based on an exchange at the beginning of the hearing when the IJ asked Defendant "what [he] would [] like to do about the case," to which he responded that he wanted to seek voluntary departure. Deportation Hearing Transcript at 4. The IJ advised Defendant that he could not determine whether Defendant was eligible for voluntary departure until the end of the hearing but that his chance for receiving it "might be better if [he had] a lawyer" and asked if Defendant still wanted to have the hearing that day. *Id.* at 5. Defendant indicated that he wanted to proceed, to which the IJ responded, "[a]lright, you understand I'm not promising that you're going to qualify or get voluntary departure?" *Id.* Defendant indicated his understanding. *Id.* Later, after analyzing Defendant's criminal record, the IJ concluded that Defendant was ineligible for voluntary departure because his convictions for the sale of marijuana amounted to aggravated felonies. *Id.* at 6.

Based on this colloquy, the Court cannot conclude that Defendant withdrew his request or waived his right to seek voluntary departure, but instead reasons that he understood that his request was pending and would be determined later in the hearing. The IJ understood this too—after Defendant indicated he wanted to proceed that day, the IJ stated that he could not promise voluntary departure, thus implying that he would conduct an inquiry into Defendant's eligibility later in the hearing. *Id.* at 5. The Court also notes that Defendant proceeded *pro se* at the hearing and, therefore, must be accorded special solicitude. *See Ruotolo v. I.R.S.*, 28 F.3d 6, 8 (2d Cir. 1994). Accordingly, the Court finds that Defendant has satisfied the first prong of the two step test for prejudice and will address the second prong of the prejudice test under the less burdensome requirements applicable to pre-hearing requests.

2. Step 2

Next, Defendant must demonstrate a reasonable probability that, but for the IJ's erroneous instruction about aggravated felonies, Defendant would have been granted voluntary departure. *Gonzalez*, 2015 WL 3443942, at *11. To do so, the Court must determine whether there is a reasonable probability that, (1) Defendant would have met the statutory eligibility requirements, and (2) a favorable exercise of discretion would have been warranted. *In re Arguelles-Campos*, 22 I. & N. Dec. at 818–20 (first analyzing respondent's statutory eligibility and then determining whether he "merit[ed] relief in the exercise of discretion").

As previously discussed, Defendant made his application for voluntary departure during the removal hearing and, therefore, would have had to meet only the minimal pre-hearing statutory eligibility requirements, and would not be obligated to demonstrate "good moral character." *Id.* at 816. The Court concludes that it is reasonably likely that Defendant would have been statutorily eligible for voluntary departure because he actively sought such relief at the first hearing, waived appeal, and did not request other relief. *See id.* at 817 (noting that pre-hearing applications require "much less from the alien" than post-hearing applications).

Turning to the exercise of discretion, the Government argues that the adverse factors outweigh the positive factors in this case, citing numerous cases where IJs denied voluntary departure. Gov't Opp. at 19–21. In particular, the Government contends that it is unlikely that an IJ would have granted voluntary departure given Defendant's marijuana convictions, particularly one which occurred only fourteen months before the deportation hearing. *Id.* at 19. Defendant, on the other hand, points to "[f]actors such as [his] more than 15 years' residence in the United States, his strong family ties with his U.S. citizen children, and a criminal record limited to convictions for marijuana and only 30 days in jail." Def. Mem. at 10. Defendant also

cites multiple cases in which "noncitizens with similar or less favorable circumstances []
received voluntary departure relief." *Id.* at 11.

The Court finds that Defendant has established a reasonable probability that the IJ would have exercised his discretion to grant Defendant voluntary departure. First, "[a]n IJ has 'broader authority to grant' pre-[hearing] voluntary departure than some other forms of immigration relief." *United States v. Alcazar-Bustos*, 382 F. App'x 568, 570 (9th Cir. 2010) (internal citation omitted). Second, Defendant's burden is not to show that he would have been granted voluntary departure, but merely that there is a reasonable probability his application would have been granted. *Gonzalez*, 2015 WL 3443942, at *11 (finding that Defendant met this burden even though the Government cited numerous favorable cases because there were also many cases coming out the other way). A reasonable probability does not require that it is "more likely than not" that the IJ would have exercised his discretion to grant Defendant voluntary departure. *Guzman*, 2018 WL 3443158, at *8. In fact, a reasonable probability has been quantified as a twenty percent probability. *Copeland*, 369 F. Supp. 2d at 288. Here, Defendant's marijuana convictions presented an adverse factor. Def. Mem. at 10. However, he had significant ties to the United States—he had resided here for over fifteen years and has children that are U.S. citizens. *Id.*; Kaminsky Decl. ¶ 3. The parties have not presented any evidence indicating that he had previously violated any immigration laws, apart from his initial entry into the United States. Gov't Opp. at 2–3 (discussing Defendant's background). Considering all of these factors, the Court is persuaded that there is a reasonable probability that the IJ would have granted Defendant's request and, accordingly, holds that Defendant was prejudiced by the IJ's failure to consider the application.

B. Exhaustion of Administrative Remedies

Section 1326(d)(1) requires that a defendant exhaust all administrative remedies before collaterally challenging a deportation order. It is undisputed that Defendant was informed of his right to appeal and waived that right. Gov't Opp. at 21; Order of Removal, Kaminsky Decl. Ex. A; Deportation Hearing Transcript at 9–10. Defendant, however, argues that his failure to exhaust should be excused because "he did not make a knowing and intelligent waiver of his right to administrative review" due to the "IJ's [mis]statement that he was ineligible for voluntary departure." Def. Mem. at 7.

It is well-settled in this Circuit that the "exhaustion requirement must be excused where an alien's failure to exhaust results from an invalid waiver of the right to an administrative appeal."[7] *United States v. Sosa*, 387 F.3d 131, 136 (2d Cir. 2004). In *Sosa*, the Second Circuit held that the defendant's "waiver of his right to an administrative appeal was not knowing and intelligent" because he "was not informed of his right to apply for Section 212(c) relief" and, therefore, excused his failure to exhaust administrative remedies. *Id.* at 137. Echoing this in *Calderon*, the Second Circuit held that Defendant's failure to exhaust administrative remedies was excused because his "choice was not knowing and intelligent" due to the IJ's erroneous instruction that he was ineligible for Section 212(c) relief. 391 F.3d at 374–75. *Gonzalez* applied this principle to voluntary departure, holding that the exhaustion requirement was excused when an IJ failed to tell a noncitizen about the right to seek voluntary departure. 2015 WL 3443942, at *12.

---

[7] The Government does not contest this and instead argues that the "IJ's correct legal instruction did not render the deportation proceeding fundamentally unfair and the defendant's failure to exhaust his administrative remedies should not be excused." Gov't Opp. at 22. This argument fails, however, because the Court has already found that the deportation proceeding was fundamentally unfair.

15

*Sosa* and *Calderon* dictate the result here. Defendant's failure to exhaust administrative remedies is excused because his waiver of his right to an administrative appeal was not knowing and intelligent due to the IJ's erroneous instruction that he was ineligible for voluntary departure. Two facts support this finding. First, Defendant proceeded *pro se* at the removal hearing. *See Calderon*, 391 F.3d at 375 (noting that proceeding *pro se* bolsters the argument that a waiver is not knowing and intelligent). Second, the IJ did not merely fail to mention voluntary departure—instead he explicitly instructed Defendant that he was *ineligible* for such relief. *See id.* (finding that the defendant presented a stronger case than Sosa for a waiver not being knowing and intelligent because the IJ "specifically stated that [the defendant] was ineligible for such relief," whereas in *Sosa* the IJ only failed to mention it).

    C. Opportunity for Judicial Review

Pursuant to Section 1326(d)(1), Defendant must demonstrate that he was deprived of the opportunity for judicial review. Here, Defendant argues that the "IJ's misadvice with respect to possible avenues of relief constitutes a denial of the opportunity for judicial review." Def. Mem. at 8. The Government contends that Defendant was not denied the opportunity for judicial review because the IJ did not commit fundamental error—an argument the Court has already rejected.

As stated in *United States v. Mendoza-Lopez*, an unknowing and unintelligent waiver of the right to appeal denies noncitizens of judicial review. 481 U.S. 828, 840 (1987); *see also Copeland*, 376 F.3d at 68 n.6 ("Where a waiver of the right to appeal is not knowing, an alien is deprived of the opportunity for judicial review."). Here, the Court has concluded that Defendant's waiver was neither knowing nor intelligent. Therefore, he was denied judicial

review.[8]

## CONCLUSION

For the reasons stated above, Defendant's motion to dismiss is GRANTED and the indictment is DISMISSED. The Clerk of Court is directed to close the case.

SO ORDERED.

Dated: December 7, 2018
       New York, New York

                                           ANALISA TORRES
                                       United States District Judge

---

[8] "The availability of habeas review is sometimes deemed to constitute an opportunity for judicial review." *Copeland*, 376 F.3d at 68. Here, however, habeas review was not available because "the REAL ID Act eliminated the availability of habeas corpus as a separate means of obtaining judicial review of a final order of removal." *Ping Chen v. Mukasey*, 257 F. App'x 437, 438 (2d Cir. 2007) (internal quotation marks omitted) (citing 8 U.S.C. §§ 1252(a)(5)).